The STATE of Texas, Appellant,

v.

Covy WILLIAMS et ux., Appellees.

No. 7386.

Court of Civil Appeals of Texas.

Texarkana.

May 8, 1962.

Rehearing Denied June 5, 1962.

Fisher, McLaughlin & Harrison, Paris, for appellant.

Moore & Lipscomb, Paris, for appellee.

CHADICK, Chief Justice.

This suit was brought by the State of Texas, in the exercise of its power of eminent domain, to condemn land for use as a public highway. Judgment was entered making an award to the landowners from which the State has appealed. The judgment of the trial court is affirmed.

A total of 10,560 acres of land was severed from two tracts, one of 19.7 acres and the other containing 14 acres, belonging to Covy Williams and wife, Catherine Williams. The issues in the trial court were confined to the determination of the

market value of the land appropriated and severance damage to the remainder. The State has briefed ten points of error, all concerned with the trial judge's rulings in the admission of evidence.

Over objection of the State, the trial judge admitted in evidence a written instrument tendered by the appellees, Covy Williams and wife. The instrument was not incorporated in the Statement of Facts. It is referred to as a Contract of Sale in Mr. Williams' testimony. Counsel for the State referred to it as an option. Mr. Williams testified that he entered into a written contract with George Buckstaff on November 3, 1959, agreeing to sell him a portion of the 14 acre tract involved in this proceeding. The consideration for the land to be sold was approximately $1,350.00 per acre. Mr. Buckstaff put up $500.00 and later "backed out" of the agreement, according to Mr. Williams, and Mr. Williams kept the $500.00.

Mr. Williams, while testifying in his own behalf as a value witness, said that in arriving at his opinion of value he considered sales of other comparable property. Among the sales he considered, or the values of lands considered, was the value inferable from the agreement with Buckstaff. The court instructed the jury that the Williams-Buckstaff Contract was admitted "only as bearing on the basis upon which Mr. Williams formed an opinion as to the value of such property."

■ Counsel for the State construed the Williams-Buckstaff agreement as an option letter, being in essence Williams' unaccepted offer to sell or Buckstaff's unconsummated offer to buy. If the essential nature of the instrument is an offer, as the State contends, the trial court should have sustained the State's objection. Unaccepted offers to buy or sell land are incompetent evidence of land value in condemnation cases. Hanks v. Gulf, Colorado & Santa Fe Railway Company, 159 Tex. 311, 320 S.W.2d 333; Taub v. Houston

Independent School District, 339 S.W.2d 227, N.R.E.; Loumparoff v. Housing Authority of City of Dallas, Tex.Civ.App., 261 S.W.2d 224, N.W.H.; State v. Layton, Tex.Civ.App., 147 S.W.2d 515, N.W.H. The same reasons that preclude evidence of an unaccepted offer render such offer valueless as a foundation for an opinion of value.

The nature of the instrument introduced is beclouded, but the evidence discernible indicates that it is very similar to an instrument considered in Robards v. State of Texas, Tex.Civ.App., 285 S.W.2d 247, N.R.E. The agreement in the Robards' case was voluntarily executed, a down payment on the land made, and by mutual agreement the parties cancelled the contract after it became known a part of the land would be condemned. In Robards it was contended, as it is here, that the agreement was a mere unaccepted offer to buy land at a given price and not admissible to show market value. The court said: "A contract of sale is not an offer. It is, if valid, a binding obligation on all parties. In our opinion it was admissible." There is no suggestion in this record that Williams and Buckstaff did not make the agreement in good faith, or that it constituted a simulated transaction. As the record stands, no error is shown in the trial court's ruling.

■ While Mr. Williams was a witness in his own behalf during re-direct examination, his counsel propounded this question:

"Mr. Williams, what effect on the value * * *, if any, does traffic on Highway 82, * * * have on the two segments that will be left?"

The State interposed the following objection:

"We are going to object to that question as being improper and too remote and not shown that he is qualified to answer, and no business operation out there to base it on."

The point of error challenging the validity of the Court's action in overruling the objection is as follows:

"The Trial Court erred in overruling appellant's objections to testimony by Covy Williams in regard to traffic count * and the relevancy thereof to the value of property involved and forms no basis in law upon which the jury could arrive at value but would permit them to speculate upon their value as a result of such testimony."

The basic issue made by the point of error is that the traffic count on Highway 82 was improperly admitted because it was not relevant in fixing the land's value. The objection made shows quite clearly that at the time the evidence was offered the State opposed it on the ground that the witness was not qualified to answer the question. No objection was made to the admission of the traffic count or its relevancy to value. The point of error is overruled. Dobb v. Perry, Tex.Civ.App., 145 S.W.2d 1103, N. W.H.; 1 Tex. Law of Evidence, p. 25, Sec. 26.

■ Edmond Castleberry, a witness for the land owner, testified that he was one of the seven Ruling Elders of the Lamar Avenue Church of Christ at the time that church acquired a ten acre tract of land adjacent to Highway 82 and the Loop Road while the Loop was under construction. (The land condemned was acquired for use in constructing the Loop.) The Ruling Elders acted for the church in making the purchase, and necessarily agreed to the price paid for the land purchased. Over objection Mr. Castleberry was permitted to testify that as an Elder he was not influenced in buying the ten acre tract by the fact that the Loop Road adjoined the east side of the property. He made it clear that he could speak only for himself and not his fellow Elders. He said that his interest was in securing property on Lamar Avenue, (Highway 82), and that the Loop Road had very little to do with the property's value so far as he was concerned. Williams as a witness in his own behalf had testified that he considered this purchase by the church in arriving at his opinion of the value of his property.

■ There is authority for the admission of evidence of sales of comparable land made subsequent to the date of condemnation where the sales considered involve land that was not benefited or its market value affected by the public improvement causing the condemnation. Housing Authority of the City of Dallas v. Shambry, Tex.Civ.App., 252 S.W.2d 963, N.R.E.; City of Houston v. Collins, Tex.Civ.App., 310 S.W.2d 697, N.W.H.: Texas Law of Condemnation (Rayburn), p. 473, Sec. 164 (4). Proof of such factors as benefit from the proposed improvement or that the improvement has not caused a substantial change in market value appear to be authorized, but evidence of the influences that prompted Mr. Castleberry to agree with his fellow churchmen in making the purchase of the ten acre tract is of no value in establishing these relevant factors. Castleberry's testimony should have been rejected. His motivation in agreeing to the purchase made by the church is entirely foreign to any issue in the condemnation proceedings. However, reviewing the record as a whole, it can't be said that the evidence was so

* On voir dire, preliminary to making the objection noted, counsel for the State questioned the witness on his knowledge of the traffic count and when the witness testified that he had only heard a figure repeated, objected to the witness stating the count, and although the objection was overruled, the witness did not testify to the count. On another occasion when John W. Baird, a witness for the land owners, was on direct examination, counsel for the State took him on voir dire and developed testimony that a map that was being offered in evidence showed a traffic count on the highway adjacent to the land for a time between November, 1954 and October, 1955. After developing such testimony State's counsel stated that there was no objection to it.

prejudicial as to require reversal of the case.

█ Related to the point just discussed is the appellant's point that the trial court erred in admitting evidence of the sale of the ten acre tract to the church as a sale of land comparable to that involved in the condemnation proceedings. Evidence of the sale was introduced as a basis for Williams' opinion of value of the land condemned and damaged; in this respect it was cumulative of other evidence. The land owner was qualified to give his opinion of value. See City of Houston v. Collins, supra; Texas Law of Condemnation Sec. 128. Supporting that value by an inadmissible sale was erroneous. Under the circumstances this court is unable to say that the admission of the sale was so prejudicial as to require a reversal of the case, as the ill effect of such evidence was diluted by the cumulative effect of the legitimate proof. See City of Dallas v. Shambry, supra; City of Houston v. Collins, supra.

All of the appellant's points of error have been carefully considered, and it is concluded that reversible error has not been shown. The points are respectfully overruled.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING.

█ A copy of the letter dated November 3, 1959, from George Buckstaff to Covy Williams, discussed in the earlier paragraphs of the original opinion, has been located in the original exhibits forwarded to this court by order of the trial judge. In the interest of orderly procedure and the expedition of business observation seems justified on the recurrent difficulties caused by the filing of original exhibits in the appellate courts. The instrument here is a carbon copy on two sheets of onionskin paper. It was forwarded to this court in a bundle of unindexed plats, photographs, and other exhibits rolled together and held by a rubber band. The letter was not found until its whereabouts was disclosed in the appellant's motion for rehearing. An instrument of this nature should have been copied into the Statement of Facts. See McFadden v. McFadden, Tex.Civ.App., 213 S.W.2d 71. Counsel should direct the clerk and stenographer in the proper preparation of the record.

The agreement evidenced by the letter is clearly an option contract, and was not admissible in evidence. In addition to the authorities cited in the original opinion, see Wichita Falls R. & F. W. Ry. Co. v. Cooper, Tex.Civ.App., 235 S.W. 927, N.W. H., cited with apparent approval in the recent case of The State of Texas v. Ralph Oakley, Tex., 356 S.W.2d 909; and 5 Eminent Domain (Nichols) 307 Sec. 21.5.

The inadmissibility of the option agreement brings to the forefront the question of harmless error. Three witnesses were tendered by the appellee who gave opinion testimony on the value of the land involved. No effort was made to qualify one of the witnesses, Mr. Morgan Johnson, as a value expert, and appellees do not now contend that he was qualified. The qualifications of the second witness, Mr. W. A. Griffin, was established. The third witness, Mr. Covy Williams, as landowner, was qualified to express an opinion on value, though his qualification as an expert on land values generally was not shown. Counsel for the State treated Mr. Williams as qualified, however, by asking him about comparable tracts and their sale price. The testimony of these witnesses is mentioned for the purpose of showing the inconclusive nature of the proof the option agreement was intended to aid and invigorate. The jury could have and perhaps did accept the option as a firm basis for an opinion of the land's value. There is strong indication that the jury gave it unusual weight from the jury verdict that the per acre value of the land appropriated was substantially the same per acre price as that agreed to in the option.

The cumulative effect of the option letter with the errors discussed in the original opinion tilt the scale in favor of a conclusion that the admission of the incompetent evidence was harmful. When the record as a whole is examined, it appears that these errors probably caused the rendition of an improper judgment.

The motion for a new trial is granted, and the judgment of the trial court is reversed and the case remanded for another trial.